Alvin L. ROYSE and Dick Dreher, Plaintiffs and Appellees,

v.

EASTER SEAL SOCIETY FOR CRIPPLED CHILDREN AND ADULTS, INC. OF NORTH DAKOTA, Defendant and Appellant.

Civ. No. 9320.

Supreme Court of North Dakota.

July 27, 1977.

C. J. Schauss, Mandan, for plaintiffs and appellees.

William R. Mills, Bismarck, for defendant and appellant.

SAND, Justice.

This appeal is taken by the Easter Seal Society for Crippled Children and Adults, Inc. of North Dakota (hereinafter Easter Seal) from a judgment of the Morton County district court, sixth judicial district, quieting title to a forty-foot easement in the plaintiffs, Alvin L. Royse and Dick Dreher, and granting a mandatory injunction for removal of construction by Easter Seal on the easement.

On 26 April 1974 Easter Seal purchased from a Mr. Almore Sprenger a small tract of land which adjoined the lots on which Easter Seal's main building was located.

The warranty deed conveying this land from Sprenger to Easter Seal provided that

"The above grantors reserve unto themselves their heirs and assigns a perpetual forty foot right of way on the south side of the above described lot for ingress and egress to the west 68.95 feet of said lot."

This language was part of the granting clause in the deed and the forty-foot right of way referred to therein is the subject of this action.

In April of 1976 Sprenger began negotiating with Homer Royse for the sale of the 68.95-foot lot that adjoined the lot purchased by Easter Seal. The negotiations culminated into a deed to Alvin Royse, Homer Royse's son. Although the deed was in Alvin's name, he did not actively participate in the transaction and did not testify at trial. Most of the actual negotiations for the sale were handled by Homer. The deed from Sprenger to Alvin Royse dated 28 June 1976, after stating the description of the land conveyed in the granting clause, provided in the exception of the habendum clause as follows:

" . . . that the same are free from all incumbrances, except the current year real estate and all special taxes for local improvements if any, and excepting assessments for local improvements which have been levied but not certified to the County Treasurer, all of which the party of the second part assumes and agrees to pay. And excepting any right of ways, easements and Pole Line Easements and maintenance thereof of record." [Underscoring ours.]

Sometime in late April or early May, 1976, Easter Seal began making preparations for a new building on the land it had acquired from Sprenger. Easter Seal received a deed from Sprenger to the right of way in question on 30 June 1976. On 14 July 1976 Alvin Royse, as owner, and Dick Dreher, as contract purchaser, served notice upon Easter Seal that they claimed a forty-foot right of way across the lot on which Easter Seal was constructing a building and that the right of way was being obstructed by Easter Seal. Dick Dreher had contract-

ed with Royse several months earlier for purchase of some of Royse's land, including the portion Royse had purchased from Sprenger.

Royse and Dreher brought action against Easter Seal on 22 July 1976 to quiet title in the right of way and for removal of Easter Seal's obstruction, and a permanent injunction against further use or interference with the right of way by Easter Seal.

The trial court held that Royse and Dreher were the rightful holders of the forty-foot easement and that an injunction should issue against any construction by Easter Seal on that forty-foot portion of land. From that judgment Easter Seal appealed.

Easter Seal's principal contentions on appeal appear to be that (1) there was error in the trial court's holding that the right of way passed in the deed from Sprenger to Royse, because the deed was ambiguous; (2) if the right of way did pass in the deed it was extinguished or abandoned; and (3) if Royse and Dreher were proper holders of the right of way, damages rather than injunction was the proper remedy.

In determining who rightfully holds the forty-foot easement, our frame of reference must be the written instruments themselves. Under § 47–09–11, North Dakota Century Code, grants of real property are to be interpreted the same as contracts in general. Thus, we apply the rule that the language, if clear and explicit, will govern the interpretation of the deeds and that the parties' intentions are to be ascertained from the writing alone, if possible. Sections 9–07–02, 9–07–04, NDCC; *Oliver-Mercer Electric Coop, Inc. v. Fisher,* 146 N.W.2d 346 (N.D.1966).

Neither party has suggested that the original deed from Sprenger to Easter Seal was ambiguous or that it failed to reserve a forty-foot easement to Sprenger. The language, "the above grantors reserve unto themselves their heirs and assigns a perpetual forty foot right of way . . ." is explicit, precise, and declarative of Sprenger's intent to reserve a stated portion of the granted land to himself. The language

was located in the granting clause of the deed, in effect re-granting the forty-foot portion of land to the Sprengers. Sprengers expressed the intent and used the appropriate words to give rise to a reservation; that is, "something to be deducted from the thing granted, narrowing and limiting what would otherwise pass by the general words of the grant." *Christman v. Emineth,* 212 N.W.2d 543 (N.D.1973).

■ The dispute arises with respect to the deed from Sprenger to Royse. No similar words of reservation are found in the granting clause of the deed. Rather, the language attempting to except any rights of way or easements was inserted within the habendum clause on the reverse side of the deed following the provision that said property was free from all encumbrances. Easter Seal contends this language is ambiguous and could be construed as an exception to the grant. We do not agree.

■ The general rule is that because a grantor is presumed to have made all the reservations or exceptions he intended to make the reservations must be clearly expressed in the deed. See 6 Powell on Real Property § 892. Further, the property which is to be excepted from the grant must be described with enough certainty so that it can be identified as to location. Many cases hold that to meet this requirement the exception must contain a description of the property as definite and certain as the designation of property used in the grant itself. See, *Holland v. Windsor,* 461 P.2d 47 (Wyo.1969); *Clay v. Smith,* 215 Ga. 668, 112 S.E.2d 767 (1960); *Rye v. Baumann,* 231 Ark. 278, 329 S.W.2d 161 (1959); *Justice v. Justice,* 239 Ky. 155, 39 S.W.2d 250 (1931); *Miller v. Nixon,* 90 W.Va. 115, 110 S.E. 541 (1922); and *Seavey v. Williams,* 97 Or. 310, 191 P. 779 (1920). Thus, a reference to property which is vague and indefinite, or so general that the property cannot be identified, will fail as an exception. Clearly, the language in the case before us referring to "any right of ways, easements, and Pole Line Easements" does not identify a particular portion of the lot to be excepted, and does not contain the certainty of description used in the granting clause.

■ In addition to the certainty requirement, an exception, although it may appear in any part of the deed, *must* be an exception to the grant, not to some other provision in the deed. Thus, words inserted in a covenant against encumbrances for the purpose of modifying the grantor's liability thereon will not constitute an exception. 26 C.J.S. *Deeds* § 138. See, *Board of County Commissioners of Choctaw County v. Weaver,* 426 P.2d 696 (Okl.1967); *Bascom v. Maxey,* 195 Okl. 259, 157 P.2d 158 (1945), for cases holding that exceptions in the habendum clause of a warranty deed cannot be held as a reservation of any part of the title conveyed by the granting clause, but must be construed as exceptions to the covenant of warranty.

■ We believe exceptions or exclusions of property should be set forth in the granting clause with the same prominence as the property granted, or, if placed elsewhere, should be so explicit as to leave no room for doubt. Were we to endorse anything short of this we would be encouraging practices which would lend themselves readily to fraud and deception. This we propose not to do.

In the instant case, we do not see how the language can be construed as other than an exception from the covenant against encumbrances. The lack of specificity about what is to be excepted, the placement of the language in the covenant against encumbrances, and the lack of any clear intent on the part of the grantor to except the forty-foot right of way from the grant all point to that conclusion.

■ Easter Seal has attempted to show what the parties actually thought was being passed in the deed, but, of course, that sort of testimony cannot be resorted to where the language written in the deed itself is not ambiguous. We will not strain to find an ambiguity where none appears on the face of the instrument.

Because there was no effective reservation or exception in the deed, it follows that the right of way passed to Royse upon transfer of the deed. Under § 47–10–11, NDCC, a transfer of real property passes all easements attached to the property, in accordance with the fundamental rule that all easements appurtenant to real property and created expressly by deed will pass with it unless expressly excepted, even if not referred to in the instrument of transfer. See *First National Trust & Savings Bank v. Smith,* 284 Mich. 579, 280 N.W. 57 (1938); 25 Am.Jur.2d *Easements and Licenses* § 95.

Because Royse, as owner of record, and Dreher, as contract purchaser of Royse's land, now hold the easement, the deed by which Sprenger subsequently attempted to convey the easement to Easter Seal was ineffective. Sprenger could not pass an interest which he did not have.

Easter Seal maintains that the easement was extinguished by Sprenger's failure to object when the foundation was being prepared or that it was abandoned by nonuse. However, Royse and Dreher point out that this issue was not raised before the trial court. It is difficult to determine from the record to what extent, if any, the issue was presented, but we are not required to give serious consideration to this argument because an easement created by express grant is not extinguished by nonuse or partial use, *Harry E. McHugh, Inc. v. Haley,* 61 N.D. 359, 237 N.W. 835 (1931); *Salmon v. Bradshaw,* 84 S.D. 500, 173 N.W.2d 281 (1969); in addition, Easter Seal, to support its contention, would have to present (which it has not) some clear and unequivocal evidence of acts demonstrating and indicating abandonment or extinguishment. See *McHugh, supra,* and § 47–05–12, NDCC, extinguishment of servitude.

The only remaining issue is whether the injunction granted by the trial court was the appropriate remedy. It is readily apparent from the record that regardless of when any of the appellees first spoke to Easter Seal about the encroachment, construction or the preparations for construction were in the very early stages when Easter Seal received formal notice that it was obstructing the right of way. The work done amounted to leveling and filling, laying a foundation, and putting up some steel beams. On the other hand, the encroachment to be made by Easter Seal was substantial. The plot of land Easter Seal purchased was only fifty feet wide. The right of way expressly reserved from that grant was forty feet side, thus entitling Easter Seal to make actual use of only a ten-foot wide strip of land. Its building, however, would extend forty feet into the strip, leaving only a ten-foot right of way. This is a substantial infringement, especially in view of the fact that the right of way was definitely, clearly, and expressly set aside. The drastic reduction in its size would render it of considerably lower value.

In *Graven v. Backus,* 163 N.W.2d 320 (N.D.1968), we stated the general rule that a mandatory injunction is a proper remedy to invoke against an adjoining landowner to compel him to remove an encroachment. We held, in addition, that in such cases the court must look at the equities involved by considering the balance of convenience or relative hardship which would result from granting or denying the injunction.

In the instant case there was no showing that the encroachment was due to innocent mistake; the extent of the encroachment is such that it makes at least three-quarters of the easement unusable; the value of the easement would be significantly decreased were the building allowed to remain; there was no evidence introduced to show the cost to Easter Seal of removing the construction; but because the construction was not far advanced the cost of removing it would not be an undue hardship in comparison to the reduced value of the plaintiffs' land. Our consideration of these factors leads us to conclude that the mandatory injunction granted by the trial court was a proper remedy.

We express no views as to what cause of action, if any, Easter Seal may have against Sprenger.

We therefore affirm the judgment of the trial court.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VOGEL, JJ., concur.