2008 ND 114

**BURLINGTON NORTHERN RAILROAD COMPANY,
Plaintiff and Appellee**

v.

**James S. FAIL and Fail Antique Auto, Inc., d/b/a Fail Antique and Customizing, Defendants and Appellants.**

**No. 20070212.**

Supreme Court of North Dakota.

June 9, 2008.

---

Stephen W. Plambeck (argued) and Jason R. Crance (appeared), Nilles, Ilvedson, Plambeck & Selbo, Ltd., Fargo, ND, for plaintiff and appellee.

Patrick W. Fisher, Fisher, Olson & Juntunen, Ltd., Grand Forks, ND, for defendants and appellants.

VANDE WALLE, Chief Justice.

[¶ 1] James S. Fail and Fail Antique Auto, Inc., doing business as Fail Antique and Customizing, appealed from a judgment declaring that Burlington Northern Railroad Company, now known as BNSF Railway Company, has a valid and enforceable railroad easement on their property. We affirm.

I.

[¶ 2] In 1989, Burlington Northern Railroad Company ("BNSF") conveyed land in Grand Forks to Glacier Park Company. BNSF had constructed railroad tracks on the land to service a potato warehouse. The quitclaim deed, which was recorded with the Register of Deeds, reserved the following in BNSF:

[A] railroad easement including the right, privilege and easement to construct, maintain, repair, renew, use, operate over, replace or remove railroad tracks, drainage facilities and appurtenances thereto in, along, over, upon or across that portion of the premises herein conveyed, as shown shaded on the attached Exhibit "B" and by this reference made a part hereof.

Through the years, the property was conveyed to others by deeds noting the conveyance was subject to any existing easements. After Fail Antique Auto, Inc., ("Fail Antique") acquired the property in 1992, Fail claimed the property was not encumbered by a valid easement and told BNSF he would be charging a fee for its use of his land.

[¶ 3] After Fail barricaded the tracks in 1993, BNSF obtained a restraining order and a district court granted partial summary judgment in favor of BNSF on the issue of whether BNSF had a valid railroad easement on the property. The district court decided the extent of the railroad easement should be determined at trial.

[¶ 4] Fail Antique subsequently filed for bankruptcy and proceedings in the case halted. After bankruptcy proceedings concluded, Fail posted the property and issued a notice of criminal trespass to BNSF, warning BNSF that it would be prosecuted if it attempted to service the potato warehouse. BNSF obtained another temporary restraining order pending a trial to resolve the issue of the extent of the railroad easement. Following trial, the district court concluded BNSF had a valid railroad easement on the property extending "16 feet out in each direction from the mid-point between the two sets of tracks."

II.

[¶ 5] Fail argues the district court erred in determining, through erroneous findings of fact and conclusions of law, that the original quitclaim deed was sufficient to reserve an easement in BNSF. We fully review conclusions of law and mixed ques-

tions of law and fact under the de novo standard. *State v. Torgerson*, 2000 ND 105, ¶ 3, 611 N.W.2d 182.

[¶ 6] Section 47–05–02.1(1), N.D.C.C., enacted in 1977, provides that "[t]he area of land covered by the easement, servitude, or nonappurtenant restriction on the use of real property shall be properly described and shall set out the area of land covered by the interest in real property." The legislative history of this section, enacted as House Bill 1087 of the 1977 Legislative Assembly (1977 N.D. Sess. Laws ch. 426, § 1), shows that as introduced the bill required that the easement be described "with particularity" but after hearing in the Senate Agricultural Committee, those words were deleted and the word "properly" was inserted. Thus the statute requires that the easement be "properly described" rather than described . "with particularity." The minutes further reveal that the concern of the proponents of the bill was with "blanket" easements whereby a utility or a railroad would have a blanket easement over any portion of the property.

[¶ 7] Although we have not heretofore had the occasion to decide a case applying this particular provision, it is a long-standing principle that a reservation must be clearly expressed in a deed and described with enough certainty so it can be identified as to its location. *Royse v. Easter Seal Society for Crippled Children and Adults, Inc.*, 256 N.W.2d 542, 545 (N.D.1977) and cases cited therein. Furthermore, we have said that exceptions or reservations of property in a deed should be set forth with the same prominence as the property granted and should be so explicit as to leave no room for doubt. *North Shore, Inc. v. Wakefield*, 530 N.W.2d 297, 300 (N.D.1995). We have also said that to require less "would be encouraging practices which would lend themselves readily to fraud and deception."

*Royse,* at 545. We see no different purpose in the requirements of N.D.C.C. § 47–05–02.1(1) nor in the requirements of N.D.C.C. § 47–04–31, providing that an instrument of conveyance containing a reservation for the *future* construction of any railroad or highway must specifically locate or describe by metes and bounds such right of way.

[¶ 8] The quitclaim deed in question reserved a railroad easement in the portion of the premises conveyed that is "shown shaded on the attached Exhibit 'B'." At the time of the quitclaim deed, railroad tracks had already been constructed on the property in question. Exhibit B shows the stretch of railroad tracks, depicted by two lines running parallel to each other. The tracks themselves and an area on either side of the track lines were shaded in. There is an arrow pointing to the shaded area on either side of the tracks and "32′" is written next to the arrow. At the bottom of Exhibit B, there is a box that is also shaded, with the words "TRACK EASEMENT RESERVED" written beside it, presumably to assist others in understanding the drawing.

[¶ 9] This is not a new reservation. The easement was reserved nearly two decades ago. The reservation was not for "future" construction of the railroad. The railroad tracks were in place when Fail obtained the property well over a decade ago and remain in place. There can be no doubt as to the location of the easement. The only thing that has changed with respect to the easement is that BNSF began using the easement to service the potato warehouse. Under these circumstances, Exhibit B properly describes a railroad easement on Fail's property and the shaded area, along with the arrow indicating

"32," sufficiently set out the area of land to be covered by the easement.

[¶ 10]   We affirm.

[¶ 11] ALLAN L. SCHMALENBERGER, D.J., CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and DALE V. SANDSTROM, JJ., concur.

[¶ 12] The Honorable ALLAN L. SCHMALENBERGER, D.J., sitting in place of CROTHERS, J., disqualified.