2011 ND 95

**RIVERWOOD COMMERCIAL PARK, LLC, and Tom S. Freidt, Plaintiffs and Appellants**

v.

**STANDARD OIL COMPANY, INC., a/k/a BP, Tesoro Refining and Marketing Company, BNSF Railway Company, and Marmot Properties, LLC, Defendants**

**Tesoro Refining and Marketing Company, Appellee.**

No. 20100268.

Supreme Court of North Dakota.

May 20, 2011.

Chad Christopher Nodland, Bismarck, N.D., for plaintiffs and appellants.

Michael J. Geiermann, Bismarck, N.D., for appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Riverwood Commercial Park, LLC, and Tom S. Freidt (collectively "Riverwood") appealed from a summary judgment dismissing Riverwood's action against Standard Oil Company, Inc. ("Standard") and Tesoro Refining and Marketing Company ("Tesoro"). We conclude the district court did not err in granting summary-judgment dismissal of Riverwood's claims because the court correctly ruled as a matter of law that Standard had been granted an easement rather than a license to operate a sewer pipeline in Morton County. We affirm.

I

[¶ 2] The historical background of this case is described in *Riverwood Commercial Park, LLC v. Standard Oil Co., Inc.*, 2005 ND 118 ¶¶ 2–3, 698 N.W.2d 478 ("*Riverwood I* "):

In 1953, Standard owned an oil refinery in Mandan, and the Northern Pacific Railway Company ("NP") owned land between the refinery and the Heart River. On March 23, 1953, NP executed a written permit granting Standard permission to "construct, operate, and maintain" a sewer pipeline along NP's

right-of-way from the refinery to the Heart River. The permit provided that Standard could not transfer or assign the permit without NP's written consent. A twenty-two inch underground sewer pipeline, including a large manhole, was constructed across NP's property from the refinery several miles south to the Heart River.

In 1998, NP [through its successor in interest, Burlington Northern and Santa Fe Railway Company ("BNSF")] sold a portion of its property containing the sewer pipeline to Marmot Properties. Since 1953, Standard has gone through a series of name changes and eventually became British Petroleum ("BP"). In 2001, BP sold the Mandan refinery to Tesoro. On May 17, 2004, Tesoro filed a "Notice of Permit," with a copy of the 1953 permit attached, with the Morton County Recorder's Office. On June 15, 2004, Marmot Properties sold the property involved in this case, with the sewer pipeline running beneath it, to Riverwood.

[¶ 3] Disputes soon arose between Riverwood and Tesoro over Riverwood's planned development of the property. In *Riverwood I*, we affirmed the district court's dismissal of Riverwood's summary eviction action against Standard and Tesoro in part because the 1953 written permit did not constitute a lease to support an eviction action under N.D.C.C. § 33–06–01(4), (7), and (8). 2005 ND 118, ¶¶ 11–13, 698 N.W.2d 478. Riverwood then brought this action against Standard and Tesoro alleging trespass, breach of contract, slander of title, right to quiet title, interference with prospective advantage, fraud, and nuisance. In *Riverwood Commercial Park, L.L.C. v. Standard Oil Co., Inc.*, 2007 ND 36, ¶ 1, 729 N.W.2d 101 ("*Riverwood II* "), we reversed the district court's dismissal of this action, concluding that the claims for slander of title, right to quiet title, interference with prospective advantage,

fraud and nuisance were not barred by res judicata, collateral estoppel, or the law of the case doctrine. We also held the court erred in dismissing with prejudice Riverwood's claims for trespass and breach of contract for failure to join indispensable parties. *Id.*

[¶ 4] On remand, the district court granted Tesoro and the other defendants' motions for summary judgment and again dismissed Riverwood's action with prejudice. The court concluded none of Riverwood's theories of recovery could be maintained because, as a matter of law, the 1953 permit created an easement rather than a license.

## II

[¶ 5] Riverwood argues the district court erred in ruling as a matter of law that the 1953 permit constituted an easement rather than a license.

[¶ 6] Our standard of review for summary judgment is well established:

"Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genu-

ine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record."

*Missouri Breaks, LLC v. Burns,* 2010 ND 221, ¶ 8, 791 N.W.2d 33 (quoting *Lucas v. Riverside Park Condominiums Unit Owners Ass'n,* 2009 ND 217, ¶ 16, 776 N.W.2d 801). Summary judgment is appropriate if reasonable minds could reach only one conclusion on the evidence submitted. *Ackre v. Chapman & Chapman, P.C.,* 2010 ND 167, ¶ 6, 788 N.W.2d 344.

■ [¶ 7] Grants of interests in real property are "interpreted in like manner with contracts in general ..." N.D.C.C. § 47–09–11; *Valley Honey Co., LLC v. Graves,* 2003 ND 125, ¶ 12, 666 N.W.2d 453; *Schulz v. Hauck,* 312 N.W.2d 360, 363 (N.D.1981); *see also Mougey Farms v. Kaspari,* 1998 ND 118, ¶¶ 18–20, 579 N.W.2d 583. In *Kuperus v. Willson,* 2006 ND 12, ¶ 11, 709 N.W.2d 726, we explained:

> Contracts are construed to give effect to the mutual intention of the parties at the time of contracting. The parties' intention must be ascertained from the writing alone if possible. A contract must be construed as a whole to give effect to each provision, if reasonably practicable. We construe contracts to be definite and capable of being carried into effect, unless doing so violates the intention of the parties. Unless used by the parties in a technical sense, words in a contract are construed in their ordinary and popular sense, rather than according to their strict legal meaning.
>
> If a written contract is unambiguous, extrinsic evidence is not admissible to contradict the written language. However, if a written contract is ambiguous, extrinsic evidence may be considered to show the parties' intent. Whether or not a contract is ambiguous is a question of law. An ambiguity exists when rational arguments can be made in support of contrary positions as to the meaning of the language in question.

(quoting *Lire, Inc. v. Bob's Pizza Inn Rests., Inc.,* 541 N.W.2d 432, 433–34 (N.D. 1995) (citations omitted)).

[¶ 8] We briefly described the difference between an easement and a license in *Riverwood I,* 2005 ND 118, ¶ 10, 698 N.W.2d 478:

> A license ... merely grants permission to use the land for a specific purpose under certain conditions and restrictions. *See Lee* [*v. North Dakota Park Serv.,* 262 N.W.2d 467, 473 (N.D.1977)]; *see also Hector v. Metro Centers, Inc.,* 498 N.W.2d 113, 117 (N.D.1993) (a license is merely a privilege to do what otherwise would be unlawful). An easement is an interest in land "consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose (such as to cross it for access to a public road)." Black's Law Dictionary 548 (8th ed.2004); *see also* 4 Powell on Real Property § 34.01[1] (2005) (an easement "may grant to A the right to do acts that, were it not for the easement, he would not be privileged to do, such as maintaining a driveway or a sewage pipe across B's land").

[¶ 9] A license differs from an easement "in one crucial particular, namely, that its duration is at the will of the servient owner." 4 Richard R. Powell, *Powell on Real Property* § 34.25, at 34–222 (2010); *see also Hector,* 498 N.W.2d at 117 (license "'is generally revocable at will without notice'") (internal citation omitted). *Lee,* 262 N.W.2d at 471 ("'a license is, ordinarily, revocable at the will of the licensor'") (internal citation omitted). "Occasionally, but not often, an easement may be created subject to a power of

termination, exercisable upon a breach of some stipulated condition. Where a breach occurs and the power of termination is exercised, the easement ends in accordance with the terms of its creation." 4 Richard R. Powell, *Powell on Real Property* § 34.19, at 34–180 (2010) (footnote omitted). Comment h to Restatement (Third) of Property § 2.2 (2000), which addresses "Intent to Create a Servitude," explains:

> *h. Was a servitude or license intended?* The principal difference between a servitude and a license is that a license is revocable at will. An easement or profit, by contrast, is normally irrevocable. Easements and profits can be revoked only if the right to revoke is expressly reserved and properly exercised. Several factors may be important in determining whether a license or a servitude was intended.

> Payment of consideration and use of formality appropriate to a land transaction usually indicate that the parties intended a servitude. Lack of formality or words of conveyance, and lack of consideration, tend to indicate that a license was intended. The existence of a close personal relationship between the parties may buttress the conclusion that a license was intended.

> . . . .

> If an investment by the grantee is contemplated by the parties, at the time the permission to use the grantor's land is sought, the extent to which the value of that investment is related to the permission to use the grantor's land is a significant factor in determining the parties' intent. The greater the extent to which the value of the investment is dependent on permanence of the right to use the grantor's land, the more likely it is that the parties intended to create a servitude. The fact that the permission was given as part of the inducement to the grantee to purchase the benefitted

> land from the grantor strongly indicates that a servitude was intended. Subsequent acts of the grantee in improving either the claimed easement or the dominant estate may also provide significant evidence of the intent of the parties. The fact that the expenditure of labor or funds on the improvements would have been unreasonable if permission to use the grantor's property could be revoked at will suggests that the parties intended to create a servitude.

[¶ 10] Under N.D.C.C. § 47–10–11, a transfer of real property "passes all easements attached to the property, in accordance with the fundamental rule that all easements appurtenant to real property and created expressly by deed will pass with it unless expressly excepted, even if not referred to in the instrument of transfer." *Royse v. Easter Seal Soc'y for Crippled Children & Adults, Inc.*, 256 N.W.2d 542, 546 (N.D.1977). However, a license is generally not assignable. *See Lee*, 262 N.W.2d at 471. "A license creates a privilege personal to the licensee, which cannot ordinarily be transferred by him to another." 3 Basil Jones, *Tiffany, The Law of Real Property*, § 832, at 407 (3d ed.1939) (footnote omitted). "Unless expressly made so, the privilege is never extended to the heirs or assigns of the licensee." 1A G. Thompson, *Commentaries on the Modern Law of Real Property* § 221, at 210 (1980) (footnote omitted).

[¶ 11] Under the 1953 permit, titled "IRRIGATION CANAL, DRAINAGE CANAL, WATER PIPE OR SEWER PIPE PERMIT (Permanent)," NP, the first party, "permits" Standard, the second party:

> to construct, operate and maintain the following facilities upon its right of way at the locations described as follows:
> Sewer pipe lines on the first party's Mandan North Line, Main Line and

Mandan South Line rights of way in Sections 23, 26 and 35, Township 139 North, Range 81 West, Fifth Principal Meridian, Morton County, North Dakota, near Mandan Station, along the courses shown in red on the plat hereto attached, Marked Exhibit A, and made a part hereof.

A water pipe line crossing said Mandan North Line right of way in Section 14, said township and range, said county, near said station, along the course shown in red on said Exhibit A.

This permission is granted upon the following terms:

1. The second party will pay a rental of twenty-five and no/100 ($25.00) dollars annually in advance, also all taxes and assessments that may be levied or assessed against the facilities.

2. The entire cost shall be borne by the second party, including but not limited to the cost of construction, operation, maintenance and removal of said facilities[.] All work hereunder by the second party shall be done in a first-class workmanlike manner to the satisfaction of the division superintendent of the first party, and in accordance with plans and specifications which he may prescribe or approve. The division superintendent of the first party shall have the right at any time when in his judgment it becomes necessary or advisable, to require any material used in the work to be replaced with like material or with material of a more permanent character; also to require additional work or changes of location as a matter of safety, or of appearance, or on account of additional tracks being laid, change of grade, or for any other reason connected with the operation of the railroad of the first party; all of which shall be done at the expense of the second party in the manner herein provided.

3. The second party agrees that the facilities shall not at any time damage the railroad or structures of the first party, or be a menace to the safety of its operation; and to indemnify and save harmless the first party from all loss and damage to its tracks, roadbed, structures, rolling stock and other property of the first party and property of third persons, and from injuries to or death of persons occasioned by the exercise of the permission hereby granted.

4. It is agreed that the provisions of Section 3 are for the equal protection of any other railroad company or companies heretofore or hereafter granted the joint use of the first party's property of which the premises upon which said facilities are located are a part.

5. The second party shall not transfer or assign this permit without the written consent of the first party.

6. If the second party shall at any time cease to maintain and operate the said facilities or shall fail to perform every agreement of this instrument, the first party may forthwith terminate this permit and may forthwith expel the second party from its premises; and at the end of the permit the second party will restore the premises of the first party to their former state.

7. This permit is effective as of January 1, 1953 & is granted subject to leases, permits, licenses and easements heretofore granted by the first party upon portions of its right of way upon which said pipe lines will be located.

8. Where said sewer pipe lines cross beneath the first party's tracks, they shall be constructed and maintained in accordance with the specifications hereto attached, Marked Exhibit B and made a part hereof and where said water pipe line crosses beneath the first party's track, it shall be constructed and main-

tained in accordance with the specifications hereto attached, marked Exhibit C and made a part hereof.

(Typewritten additions underscored).

[¶ 12] We conclude the district court did not err in determining the 1953 permit is ambiguous regarding whether it constitutes an easement or a license. This Court suggested an ambiguity existed in the permit when it said in *Riverwood I,* 2005 ND 118, ¶ 10, 698 N.W.2d 478, that the "1953 permit created, at best, a license or easement." The 1953 permit uses neither the term easement nor the term license to describe its legal effect. Rational arguments can be made to support arguments that the permit constitutes either an easement or a license.

[¶ 13] Riverwood contends the 1953 permit constitutes a license because: (1) the permit was not filed with the register of deeds at the time it was given; (2) the reservation of easements in the deed from BNSF to Marmot did not explicitly describe the 1953 permit; (3) there is no language suggesting a conveyance; (4) the permit calls for "rent" payments; (5) the landowner has authority to approve or reject construction plans; (6) the landowner, in its discretion, can order Standard to replace or move its equipment at its own cost for "appearance" or "safety" issues; (7) under the permit, Standard agreed to pay damages if damage is caused by the pipe line; (8) the permit is nontransferable without the landowner's written approval; (9) the landowner can void the permit if Standard ceased to "maintain and operate" the pipe; and (10) the railroad can void the permit if Standard failed to comply with its terms.

[¶ 14] Tesoro contends the 1953 permit constitutes an easement because: (1) the permit is written on a form captioned as being "Permanent"; (2) the permit provides for payment of annual "rental" fees to the landowner; (3) the permit allows the landowner to relocate the storm sewer, but does not allow the landowner to order its removal at its will; (4) the permit allows the landowner to require Standard to replace any part of the storm sewer with "material of a more permanent character"; and (5) the permit uses the word "granted," a term of conveyance, to describe the issuance of the permit.

[¶ 15] The district court agreed with Tesoro that the 1953 permit was much more characteristic of an easement rather than a license, and further relied upon undisputed extrinsic evidence to support its conclusion:

> BNSF never took action to remove BP from the property or exercise its rights under the agreement when BP transferred [its] interest to Tesoro. Similarly, BNSF has not taken action to remove Tesoro from the property, exercise its rights to terminate the agreement, or force Tesoro to remove the pipeline. That BNSF at all times has been fully aware of the transfers occurring between BP and Tesoro and has never terminated the agreement despite noncompliance with its terms, indicates the existence of an easement rather than a license. Furthermore, the pipeline is permanent in nature; it is at least twenty feet below the surface of the ground and is constructed of several miles of concrete. BNSF accepted regular rental payments from BP and now accepts regular rental payments from Tesoro. Although Plaintiffs argue that accepting said rent is inconsistent with an easement, this acceptance of annual payment simply confirms the existence of an ongoing relationship and easement status. Plaintiffs acknowledge that BNSF has also retained mineral rights, and thus still has retained some measure of interest in the property, though BNSF does not specify the extent of that interest

aside from what is contained in the Quit Claim Deed.

The true nature of the Permit is further discerned by looking at the following undisputed facts; the parties' conduct and conveyances over several years:

1. Peter and Mary Syvrud granted a perpetual easement to Standard Oil Company, n/k/a BP, in June 1953 for the construction and maintenance of a sewer pipe line, on property adjacent to the property at issue.

2. Following the March 23, 1953 permit granting BP the right to maintain a pipeline across the property, BP and Tesoro were never notified by BNSF that the permit had or has been cancelled.

3. BNSF transferred its interest by quit claim deed to Marmot in 1998, "subject ... to all existing interests, including but not limited to [BNSF's mineral interests,] all reservations, rights-of-way *and easements of record or otherwise* and easement dated May 20, 1959 in favor of the Lower Heart River Water Conservation & Flood Control District for flood control purposes." Defendant Tesoro's Ex. D (emphasis added).

4. Plaintiffs signed a purchase agreement with Marmot for the property on April 14, 2004, knowing that the pipeline ran through the property.

5. On May 17, 2004, Tesoro filed a Notice of Permit with the Morton County Recorders Office.

6. On June 15, 2004, Marmot issued a Warranty Deed to Plaintiffs, subject to BNSF's mineral rights. The Warranty Deed conveyed all of Marmot's interest "free from encumbrances ... *except easements*[.]"

The above time line and conduct show the permanency of Tesoro's continuing interest in the property. BNSF granted BP the right to construct and maintain a pipeline across BNSF's land, *see Riverwood I*, ¶ 10, 698 N.W.2d at 482, suggestive of an easement. Tesoro was then given that right. Each conveyance of the property, from BNSF to Marmot to Riverwood, contained explicit language that the grantee's or buyer's property rights were subject to easements or encumbrances. BNSF retained certain rights when it conveyed to Marmot by Quit Claim Deed in 1998. Despite BP's conveyance to Tesoro in 2001 violating the terms of the agreement, BNSF chose not to terminate Tesoro's interest. *See* Permit, Plaintiffs' Ex. 002, cl. 6. Plaintiffs do not raise issue with the foregoing facts. The facts strongly suggest conduct forming a continuing relationship and an intent to create a permanent easement, which passes with the land upon conveyance. N.D.C.C. § 47–10–11; 25 Am.Jur. Easements and Licenses § 8 (2010).

[¶ 16] We agree with the district court that the 1953 permit constituted an easement. The permit is not revocable at the will of the landowner, but is subject to termination only under limited circumstances. Although the landowner could have terminated the permit for violation of its conditions, the landowner has not done so. None of the reasons cited by Riverwood persuades us that the permit is a license because those reasons are not necessarily inconsistent with the creation of an easement.

[¶ 17] Riverwood's reliance on *Sinclair Pipe Line Co. v. United States*, 152 Ct.Cl. 723, 287 F.2d 175 (1961), to support its argument that the 1953 permit constitutes a license is misplaced. In *Sinclair Pipe*

*Line Co.,* the document from the railroad company used no words of conveyance, but extended " 'permission and privilege, as a mere license' " to maintain and operate a pipeline on the railroad company's land. *Id.* at 176. Here, the 1953 permit does not mention the term "license," but uses the term "granted," which is a word of conveyance. *See id.* We are also unpersuaded by Riverwood's reliance on *Burlington N. R.R. Co. v. Fail,* 2008 ND 114, 751 N.W.2d 188, for the proposition that the quit claim deed Marmot Properties received from BNSF failed to adequately describe the 1953 permit or easement, and therefore, the easement is void. In *Fail,* we interpreted the requirements of N.D.C.C. § 47–05–02.1(1) in conjunction with a 1989 quit claim deed that in itself reserved a railroad easement on the premises conveyed. 2008 ND 114, ¶¶ 2, 8, 751 N.W.2d 188. The requirements of N.D.C.C. § 47–05–02.1(1) apply to easements "which become binding after July 1, 1977." The easement at issue here became binding when the permit was issued in 1953. *Fail* does not hold that all quit claim deeds must contain proper descriptions of all prior encumbrances.

[¶ 18] We also reject Riverwood's argument that the court's conclusion the permit was ambiguous and its reliance on extrinsic evidence precluded disposition by summary judgment. Although the district court relied on extrinsic evidence to support its decision that the permit is an easement, that evidence was undisputed. A trial on factual issues is not required "if reasonable minds could reach only one conclusion on the evidence submitted to the district court." *Ackre,* 2010 ND 167, ¶ 6, 788 N.W.2d 344. Moreover, "[i]f the extrinsic evidence is conclusive and undisputed, the determination of the meaning of a contract is a function for the court to resolve as a matter of law." *Bernabucci v. Huber,* 2006 ND 71, ¶ 21, 712 N.W.2d 323. We conclude the 1953 permit as a matter of law constitutes an easement rather than a license.

### III

[¶ 19] Riverwood does not challenge the district court's conclusion that all of Riverwood's claims fail as a matter of law if the 1953 permit constitutes an easement. We have considered other arguments raised by Riverwood and do not address them because they are unnecessary to our decision. The summary judgment is affirmed.

[¶ 20] DALE V. SANDSTROM, and MARY MUEHLEN MARING, JJ., ALLAN L. SCHMALENBERGER, S.J., STEVEN L. MARQUART, D.J., concur.

[¶ 21] The Honorable ALLAN L. SCHMALENBERGER, S.J. and the Honorable STEVEN L. MARQUART, D.J., sitting in place of KAPSNER, J. and CROTHERS, J., disqualified.