Filed 9/15/11 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2011 ND 184

Benz Farm, LLP, Plaintiff and Appellant

v.

Cavendish Farms, Inc., Defendant and Appellee

No. 20110025

Appeal from the District Court of Stutsman County, Southeast Judicial District, the Honorable Daniel D. Narum, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

Rudra Tamm, 222 North 4th Street, Bismarck, N.D. 58501, for plaintiff and appellant.

Benjamin John Hasbrouck (argued) and Todd Ervin Zimmerman (on brief), 51B Broadway, Suite 402, Fargo, N.D. 58102-4970, for defendant and appellee.

Benz Farm, LLP v. Cavendish Farms, Inc.

No. 20110025

VandeWalle, Chief Justice.

[¶1] Benz Farm, LLP (“Benz”) appealed from a summary judgment dismissing its action against Cavendish Farms, Inc. (“Cavendish”) for breach of contract and violation of the Unlawful Sales or Advertising Practices Act, N.D.C.C. ch. 51-15, and awarding Cavendish attorney fees.  We affirm, concluding: (1) the district court did not err in granting summary judgment dismissing Benz’s breach of contract claims; (2) the Unlawful Sales or Advertising Practices Act does not apply to, or create a cause of action against, a purchaser; (3) the district court did not abuse its discretion in denying Benz’s motion to amend its complaint; and (4) the district court did not err in awarding Cavendish attorney fees.

I

[¶2] Cavendish owns and operates a potato processing facility in Jamestown.  Benz is a limited liability partnership that grows and sells potatoes.  

[¶3] In 2006, Cavendish and Benz entered into written agreements for the sale and purchase of potatoes. One was a “Grower Storage Agreement,” under which Benz agreed to grow and sell, and Cavendish agreed to buy, 150,000 hundredweight of potatoes, to be stored after harvest by Benz until Cavendish directed they be delivered to its processing plant.  The second agreement was a “Company Storage Agreement,” under which Benz agreed to grow and sell, and Cavendish agreed to buy, 113,000 hundredweight of potatoes, to be delivered to and stored by Cavendish.  The parties also entered into a written credit agreement, whereby Cavendish agreed to provide financing for Benz’s expenses in growing the potatoes.

[¶4] Both storage agreements contained detailed provisions specifying quality requirements for the contracted potatoes, and Cavendish was not required to purchase any potatoes that fell below certain minimum quality standards.  The agreements also provided that “[t]he potatoes will be grown on the fields designated in Exhibit A, which is attached and incorporated herein.”  At the time of signing the agreements there was no “Exhibit A,” and the parties had not agreed on a designation of which fields would be stored by Benz and which by Cavendish.  Benz subsequently submitted “Field Detail Forms” specifying the varieties of potatoes planted and other details, including which fields would be stored under each contract, but those forms were not signed by Cavendish.

[¶5] In September 2006, after Benz began delivering potatoes to Cavendish under the Company Storage Agreement, testing by an independent quality grading service revealed that the potatoes were affected by rot and pink eye and did not meet the minimum quality specifications of the contract.  Cavendish expressed concern about accepting the potatoes into its storage facility because the problems could spread to the other potatoes stored there.  Monte Benz, one of the Benz partners, suggested they could “switch fields,” storing the potatoes from the affected fields in Benz’s storage facilities and delivering better-quality potatoes from other fields for storage by Cavendish.  Benz claims that the parties orally agreed to “switch fields” and that Cavendish also agreed to modify the delivery schedule and call for delivery of the deteriorating potatoes “as soon as possible” or within thirty days.  Cavendish ultimately accepted delivery and paid for 80,000 hundredweight of the affected potatoes, but Benz disposed of the remaining 70,000 hundredweight as hog feed.

[¶6] In 2007, the parties entered into a Company Storage Agreement.  Benz claims that there were numerous oral agreements regarding the dates that Cavendish would accept deliveries, but that Cavendish accepted only limited deliveries on those dates, causing inefficiencies and additional expenses for Benz.  

[¶7] Benz brought this action against Cavendish in December 2008, alleging various claims and theories of liability.  For purposes of our resolution of this appeal, Benz alleged that the parties had orally modified their 2006 written agreements and that Cavendish had breached the oral agreement by not timely calling for delivery of the deteriorating potatoes.  Benz also alleged that Cavendish violated the Unlawful Sales or Advertising Practices Act, N.D.C.C. ch. 51-15, and breached oral agreements regarding delivery dates under the 2007 contract.  Cavendish answered and sought attorney fees as allowed under the parties’ written agreements.  

[¶8] Cavendish moved for summary judgment dismissing Benz’s claims.  Benz filed  a response to the motion for summary judgment and moved to amend its complaint to add new legal theories and claims for damages.  The district court denied the motion to amend the complaint, ordered summary judgment dismissing Benz’s claims, and awarded Cavendish attorney fees.  

II

[¶9] Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law.  
Riverwood Commercial Park, LLC v. Standard Oil Co.
, 2011 ND 95, ¶ 6, 797 N.W.2d 770.  The party moving for summary judgment has the initial burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  
Id.
  The degree of response required of the party opposing the motion for summary judgment is set by the scope of the motion.  
Collection Ctr., Inc. v. Bydal
, 2011 ND 63, ¶ 9, 795 N.W.2d 667.  As we explained in 
Collection Ctr.
, at ¶ 9 (quoting 
Barbie v. Minko Constr., Inc.
, 2009 ND 99, ¶ 6, 766 N.W.2d 458):

If the moving party meets its initial burden of showing the absence of a genuine issue of material fact, the party opposing the motion may not rest on mere allegations or denials in the pleadings, but must present competent admissible evidence by affidavit or other comparable means to show the existence of a genuine issue of material fact.  Rule 56 requires the entry of summary judgment against a party who fails to establish the existence of a material factual dispute as to an essential element of the claim and on which the party will bear the burden of proof at trial.  When no pertinent evidence on an essential element is presented to the trial court in resistance to the motion for summary judgment, it is presumed that no such evidence exists.  This Court has repeatedly cautioned that mere speculation is not enough to defeat a motion for summary judgment, and a scintilla of evidence is not sufficient to support a claim. 

[¶10] In determining whether summary judgment was appropriately granted, we view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record.  
Riverwood
, 2011 ND 95, ¶ 6, 797 N.W.2d 770.  This Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law.  
Id.
; 
Collection Ctr.
, 2011 ND 63, ¶ 9, 795 N.W.2d 667.  The determination whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.  
Riverwood
, at ¶ 6; 
Collection Ctr.
, at ¶ 9.  

III

[¶11] Benz contends the district court erred in granting summary judgment dismissing its breach of contract claim for the 2006 crop year.  Benz alleges that the parties orally agreed on September 15, 2006, that the potatoes infected with rot and pink eye would be stored by Benz and that Cavendish would call for delivery of the potatoes as soon as possible or within thirty days.  Benz further contends Cavendish breached the oral agreement by failing to call for delivery of all the potatoes within that time.

[¶12] The district court provided several alternative reasons explaining its conclusion that summary judgment was warranted, including the parties’ express agreement that the written contracts could not be modified orally.  The court provided a cogent factual summary and explanation of its reasoning on this issue:

Benz’s claim for breach of contract in 2006, like its 2007 claim, hinges on whether or not Cavendish failed “to accept 
timely
 delivery of the Benz potato crop.”  In other words, Benz admits that Cavendish accepted and fully paid for all the potatoes that were actually delivered, but contends that Cavendish should have taken delivery of all the potatoes sooner, when, allegedly, they remained of contract quality.  This claim, however, cannot be supported under the plain language of the Agreements.  

. . . .

Both the Grower and the Company Storage Agreements provide that “Grower will deliver all ‘contracted potatoes’ 
as directed by
 Cavendish Farms Inc.” and provides that time is of the essence.  Additionally, the Grower Storage Agreement (which governs the potatoes stored by Benz) expressly contemplates that Benz may be required to store the potatoes into July of the year following harvest, well beyond the December, 2006, date by which Benz admits the potatoes had gone bad and the February, 2007, date when Benz disposed of them “as hog feed.”  Thus, the plain language of the Grower Storage Agreement cannot support Benz’s claim for breach of contract on the 2006 crop.

. . . .

Accordingly, Benz’s 2006 breach of contract claim fails, unless there was a legally binding oral modification to the 2006 Grower Storage Agreement.  Despite its admission that the parties did not discuss when Cavendish must take delivery (“I don’t believe at that day [the date of the alleged oral modification] it was discussed when”), Benz asserts that Cavendish orally promised to take the potatoes “as soon as possible,” which Benz “expected . . . to be by the 15th of October.”  For purposes of this motion, the Court assumes Benz’s assertion is true.

The Grower Storage Agreement, however, does not allow for oral modifications.  It provides that it “is the entire contract of the parties” and that “[a]ny modification to this contract shall be in writing signed by a duly authorized Cavendish Farms Inc. representative.”  Furthermore, it provides that time is of the essence in the performance of the Agreement, thus making the timing of delivery a key term.  Mr. Benz understood these contractual terms, and the parties even made written and signed modifications on certain occasions.  Yet Mr. Benz concedes that the alleged oral modification at issue was never put in writing, as follows:

Q. And was there ever any writing signed by a Cavendish Farms representative regarding the modifications that you’re alleging in this lawsuit?

A. No.

No-oral modification clauses are enforced under North Dakota law.  
See
 
Dalan [v. Paracelsus Healthcare Corp.]
, 2002 ND 46, ¶¶ 9, 13, 640 N.W.2d 726 (affirming summary judgment on basis of no-oral modification clause when plaintiff admitted none of the alleged oral agreements “were reduced to writing” and failed to show a breach of the “express terms of the contract.”) Here Benz admits there was no signed writing, and, as explained above, there is no evidence of a breach of the contract’s written terms. 

[¶13] Benz’s claim that Cavendish breached the 2006 agreement is premised entirely upon its assertion that Cavendish failed to timely call for delivery of the potatoes stored in Benz’s facilities.  The written Grower Storage Agreement gave Cavendish broad discretion in deciding when to call for delivery of the stored potatoes, and expressly contemplated that Benz may be required to store the potatoes until July 2007.  Benz does not allege a violation of the written contract, but argues only that Cavendish violated the alleged September 2006 oral agreement to accept delivery of the deteriorating potatoes as soon as possible or within thirty days.

[¶14] As noted by the district court, the written Grower Storage Agreement provided that “[a]ny modification to this contract shall be in writing signed by a duly authorized Cavendish Farms Inc. representative.”  This Court recognized the validity and enforceability of a “no oral modification” clause in 
Dalan v. Paracelsus Healthcare Corp.
, 2002 ND 46, ¶¶ 9, 13, 640 N.W.2d 726.  In 
Dalan
, we upheld summary judgment dismissing an employee’s claim that he was entitled to recover additional compensation orally promised by his employer because the written employment contract prohibited oral modification of the parties’ agreement.  
Id.
 at ¶¶ 8-9, 13.

[¶15] Further support for this conclusion is provided by the Uniform Commercial Code, N.D.C.C. tit. 41.  We have held, in a case involving Cavendish’s standard written agreements, that a contract to purchase a future crop, such as the agreement at issue in this case, is a contract for the sale of goods governed by the Uniform Commercial Code, N.D.C.C. tit. 41.  
Cavendish Farms, Inc. v. Mathiason Farms, Inc.
, 2010 ND 236, ¶ 5, 792 N.W.2d 500; 
see also
 
Red River Commodities, Inc. v. Eidsness
, 459 N.W.2d 811, 814 (N.D. 1990); 
Red River Commodities, Inc. v. Eidsness
, 459 N.W.2d 805, 807 (N.D. 1990).  The Uniform Commercial Code expressly recognizes the validity and enforceability of contractual provisions precluding oral modification or rescission of a written contract for the sale of goods:

A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a requirement on a form supplied by the merchant must be separately signed by the other party.

N.D.C.C. § 41-02-16(2) (U.C.C. § 2-209(2)); 
see also
 2A Lary Lawrence, 
Anderson on the Uniform Commercial Code
 §§ 2-209:80 and 2-209:81 (3d ed. 2008).  The purpose of N.D.C.C. § 41-02-16(2) is to “protect against false allegations of oral modifications.”  N.D.C.C. § 41-02-16(2) (Official Comment); 
see also
 2A 
Anderson
, at § 2-209:84 (“The purpose of U.C.C. § 2-209(2) is to protect against false claims that an oral modification has been made to a written contract and, in effect, to permit the parties to make their own statute of frauds with respect to future modifications of their agreement.”).

[¶16] The written contracts in this case included valid, enforceable “no oral modification” clauses.  Because Benz’s 2006 breach of contract claim was premised entirely upon the alleged September 2006 oral modification of the delivery provisions of the parties’ written agreement, the district court did not err in granting summary judgment dismissing the breach of contract claim.

IV

[¶17] Benz contends the district court erred in dismissing its claim for damages under the Unlawful Sales or Advertising Practices Act, N.D.C.C. ch. 51-15.

[¶18] The Unlawful Sales or Advertising Practices Act prohibits deceptive or fraudulent conduct in the sale or advertising of merchandise:

The act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice.

N.D.C.C. § 51-15-02.  The Act authorizes a private cause of action “by any person against any person who has acquired any moneys or property by means of any practice declared to be unlawful in this chapter.”  N.D.C.C. § 51-15-09; 
see also
 
Ackre v. Chapman & Chapman, P.C.
, 2010 ND 167, ¶ 19, 788 N.W.2d 344.

[¶19] Benz’s claims against Cavendish under the Act are unique in that Benz was the seller, yet it seeks to hold Cavendish, the purchaser, liable for violation of the Act.  Prior cases under the Act have exclusively involved claims against the party selling or advertising the sale of merchandise.  
See
 
Ackre
, 2010 ND 167, 788 N.W.2d 344; 
State ex rel. Stenehjem v. Simple.net, Inc.
, 2009 ND 80, 765 N.W.2d 506; 
Jorgenson v. Agway, Inc.
, 2001 ND 104, 627 N.W.2d 391; 
State ex rel. Spaeth v. Eddy Furniture Co.
, 386 N.W.2d 901 (N.D. 1986).  Benz cites no cases holding a purchaser liable under the Act or under any similar provision prohibiting deceptive sales practices.

[¶20] We construe the Act to apply only to the conduct of the person who sells or advertises merchandise.  The statute prohibits deceptive or fraudulent acts “in connection with the sale” of merchandise.  The Act defines “sale” as “any sale, offer for sale, or attempt to sell any merchandise for any consideration.”  N.D.C.C. § 51-

15-01(5).  It does not define sale in terms of a purchase, offer to purchase, or attempt to purchase.  Rather, the language of the Act, and particularly the definition of “sale” applicable to the Act, focuses upon the conduct of the seller.  We conclude the Act does not apply to, or create a cause of action against, a purchaser of merchandise.

[¶21] Benz argues that Cavendish is liable under the Act because Cavendish was actually a part-owner of the potatoes, and thus was both a seller and purchaser of fifty percent of the potatoes.  Benz’s argument is premised upon its assertion that the 2006 agreements between Benz and Cavendish created a joint venture.  Benz attempted to raise its assertion that the parties were engaged in a joint venture in the proposed amendment to its complaint which was submitted in response to Cavendish’s motion for summary judgment and which was not allowed by the district court.  We note, however, that the unambiguous written agreements between the parties expressly provided that “Cavendish Farms agrees to buy potatoes from Grower” and “Grower agrees to grow and sell potatoes to Cavendish Farms,” and that the parties were not “an employee, partner, agent of, or joint venturer with each other for any purpose.” 

[¶22] We conclude the district court did not err in dismissing Benz’s claim for damages under the Unlawful Sales or Advertising Practices Act, N.D.C.C. ch. 51-15.

V

[¶23] Benz contends the district court abused its discretion when it denied Benz’s motion for leave to amend its complaint.

[¶24] This action was commenced in December 2008.  On March 17, 2009, the district court issued a scheduling order under N.D.R.Civ.P. 16 setting deadlines for discovery and motions. The order directed that the deadline for motions to amend the pleadings was April 30, 2009.  Cavendish filed its motion for summary judgment on February 2, 2010.  On March 8, 2010, Benz filed a motion for leave to file an amended complaint, which added various new legal theories and claims for relief.

[¶25] We recently summarized the applicable standard of review when a party moves for leave to amend its complaint after a responsive pleading has been served:

Under N.D.R.Civ.P. 15(a), once a responsive pleading has been served, a complaint may only be amended by leave of court or by written consent of the opposing party.  A district court has wide discretion in deciding whether to permit amended pleadings after the time for an amendment has passed.  We will not reverse the district court’s decision whether to grant a party’s motion to amend unless there is an abuse of discretion.  A district court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably, or when its decision is not the product of a rational mental process leading to a reasoned determination.  When a proposed amendment would be futile, the district court does not abuse its discretion in denying a motion to amend the complaint. 

Johnson v. Hovland
, 2011 ND 64, ¶ 8, 795 N.W.2d 294 (citations omitted).

[¶26] In this case, Benz sought to amend its complaint more than ten months after expiration of the deadline set in the district court’s Rule 16 scheduling order, less than two months before trial, and in response to a motion for summary judgment.  Under these circumstances, a heightened showing is required when leave to amend the complaint is sought:

This Court has also described the standard to be applied when a party moves to amend its complaint in response to an opposing party’s summary judgment motion: 

If leave to amend is sought before discovery is complete and neither party has moved for summary judgment, the accuracy of the ‘futility’ label is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6).  In this situation, amendment is not deemed futile as long as the proposed amended complaint sets forth a general scenario which, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory.  If, however, leave to amend is not sought until after discovery has closed and a summary judgment motion has been docketed, the proposed amendment must be not only theoretically viable but also solidly grounded in the record. In that type of situation, an amendment is properly classified as futile unless the allegations of the proposed amended complaint are supported by substantial evidence.

[
Darby v. Swenson, Inc.
, 2009 ND 103, ¶ 12, 767 N.W.2d 147] (quoting 
Hatch v. Dep’t for Children, Youth and Their Families
, 274 F.3d 12, 19 (1st Cir. 2001) (citations omitted)).  “Other courts have explained that an amendment is futile for purposes of determining whether leave to amend should be granted, if the added claim would not survive a motion for summary judgment.”  
Darby
, at ¶ 13 (citations omitted).

Johnson
, 2011 ND 64, ¶ 9, 795 N.W.2d 294.

[¶27] The district court provided a thorough analysis of its reasoning for denying the motion to amend the complaint, explaining that the motion was untimely, the amendment at such a late date would have been unfairly prejudicial to Cavendish, the proposed new claims were not supported by substantial evidence, and the amendments would have been futile.  The district court did not act arbitrarily, unconscionably, or unreasonably, and we therefore conclude the court did not abuse its discretion when it denied Benz’s motion for leave to amend the complaint.  

VI

[¶28] Benz contends the district court erred in awarding Cavendish attorney fees for defending against Benz’s claims.

[¶29] The written agreements between the parties expressly provided that, “[i]n the event of litigation arising out of this agreement, the prevailing party is entitled to reimbursement for costs and expenses including reasonable attorney fees at trial and on appeal.”  The district court relied upon this provision in awarding Cavendish, as the prevailing party, attorney fees reasonably expended defending against Benz’s claims.

[¶30] Benz argues the district court erred in relying upon the attorney fee provision in the written agreements because its claims were premised entirely upon the alleged oral agreements between the parties.  As noted by the district court, however, “[t]his litigation arose out of the contractual relationship between Benz and Cavendish,” which was rooted in the written agreements.  Furthermore, the district court and this Court have rejected Benz’s claim that there were binding, enforceable oral agreements, and have held that the written agreements exclusively govern the parties’ contractual relationship.  Under these circumstances, this litigation arose out of the written agreements, and the attorney fee provisions of those agreements apply to all of Benz’s claims.

[¶31] We conclude the district court did not err in awarding Cavendish attorney fees.

VII

[¶32] We have considered the remaining issues and arguments raised by the parties and find them to be either unnecessary to our decision or without merit.  The summary judgment is affirmed.  

[¶33] Gerald W. VandeWalle, C.J.

Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom