Filed 9/20/18 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2018 ND 214

Rodney G. Riskey, individually and as 

Co-trustee of the Annette Riskey Family 

Irrevocable Trust dated April 12, 2004, Plaintiff and Appellee

v.

Jeffrey T. Riskey, in his capacity as 

Co-trustee of the Annette Riskey Family 

Irrevocable Trust dated April 12, 2004, Defendant and Appellant

No. 20170392

Joseph Riskey, Robert E. Riskey, 

Randy G. Riskey, John G. Riskey, and 

Jeff T. Riskey, individually and as 

Co-trustee of the Annette Riskey Family 

Irrevocable Trust dated April 12, 2004, Plaintiffs and Appellants

v.

Rodney G. Riskey, individually and as

Co-trustee of the Annette Riskey Family 

Irrevocable Trust dated April 12, 2004, Defendant and Appellee

______________________

No. 20170393

Appeal from the District Court of Walsh County, Northeast Judicial District, the Honorable Lonnie Olson, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

Lawrence D. DuBois, Cavalier, ND, for plaintiff and appellee.

Theodore T. Sandberg (argued) and Laura D. Cobb (on brief), Grand Forks, ND, for defendant and appellant.

Riskey v. Riskey

Nos. 20170392 & 20170393

VandeWalle, Chief Justice.

[¶1] 
Jeffrey Riskey, individually and as co-trustee of the Annette Riskey Family Irrevocable Trust dated April 12, 2004 (“Trust”), and other Riskey family members (collectively, “the Riskeys”) appealed from judgments entered after the district court granted his brother and co-trustee Rodney Riskey’s summary judgment motion.  We conclude that the facts, when viewed in a light most favorable to the Riskeys, do not support a conclusion that the Trust’s purchase option provision was the effect of Rodney Riskey’s undue influence on their mother, Annette Riskey.  We affirm.

I

[¶2] In granting Rodney Riskey’s summary judgment motion, the district court provided the following undisputed facts:

Annette Riskey’s husband, Gilbert Riskey, died in December 2003.  Within months of the death, Rodney Riskey brought Annette Riskey to attorney David Peterson.  A new trust was drafted which allowed Rodney Riskey to purchase land, bins and a house owned by Annette Riskey [after her death] for the sum of $65,000.  The trust was signed by Annette Riskey [as settlor] and Rodney Riskey [as co-trustee] on April 12th, 2004.  Jeffrey Riskey was appointed [c]o-trustee but was only sent a signature page, which he signed shortly thereafter.  Jeffrey Riskey did not know of the purchase option until 2015.  All parties agree the land, bins and house are worth more than $65,000, though no appraisal has been admitted into the record.  Annette Riskey died in November 2015.  Rodney Riskey executed a purchase agreement, which Jeffrey Riskey, [c]o-trustee, would not sign.

In 2004 Annette Riskey had also executed a warranty deed transferring the property to the co-trustees, Rodney Riskey and Jeffrey Riskey, and reserving a life estate.

[¶3] In February 2016, Rodney Riskey filed this action seeking an order to compel Jeffrey Riskey, as co-trustee, to execute the purchase option required under the 2004 Trust’s provision allowing Rodney Riskey to purchase farmland and homestead area for $65,000.  This provision states, in relevant part:  “The Co-Trustees shall give an option unto my son, Rodney G. Riskey, to purchase the NE1/4-6-155-51, including any buildings thereon, and the SE1/4-6-155-51 for the sum of $65,000, said option exercisable and payable in full within 6 months of [Annette Riskey’s] death.”  Jeffrey Riskey answered the complaint in his capacity as co-trustee, responding that Rodney Riskey had improperly, illegally, and unduly influenced Annette Riskey during the formation of the Trust, which caused the creation of Trust provisions that were not Annette Riskey’s personal desires and intentions.

[¶4] In March 2016, brothers Jeffrey Riskey, Randy Riskey and John Riskey, and family members representing deceased brothers Joseph Riskey and Robert Riskey, commenced a separate action seeking to reform the Trust.  The Riskeys claimed the trust provision containing the purchase option was invalid, also alleging their brother Rodney Riskey had exerted undue influence over their mother, Annette Riskey, in creating the Trust with the purchase option.  In June 2016, the parties stipulated to joining the two cases for discovery and trial.

[¶5] In August 2017, Rodney Riskey moved for summary judgment in both of the cases, and the Riskeys opposed the motion.  After a September 2017 hearing, the district court granted summary judgment in favor of Rodney Riskey, holding the Riskeys had failed to present sufficient evidence to overcome summary judgment on their undue influence claim.

II

[¶6] Our standard for reviewing a district court’s grant of summary judgment is well established:

[Summary judgment] is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law.  A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record.  On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law.  Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

Maragos v. Newfield Prod. Co.
, 2017 ND 191, ¶ 7, 900 N.W.2d 44 (quoting 
Krenz v. XTO Energy, Inc.
, 2017 ND 19, ¶ 17, 890 N.W.2d 222).

[¶7] “Summary judgment is inappropriate if neither party is entitled to judgment as a matter of law or if reasonable differences of opinion exist as to the inferences to be drawn from the undisputed facts.”  
Northern Oil & Gas, Inc. v. Creighton
, 2013 ND 73, ¶ 11, 830 N.W.2d 556 (citation omitted).  “Deciding an issue on summary judgment is not appropriate if the court must draw inferences or make findings on disputed facts.”  
Id.
 at ¶ 20.  When ruling on a summary judgment motion, the court may not weigh the evidence, determine credibility, or decide the truth of the matter.  
Farmers Union Oil Co. v. Smetana
, 2009 ND 74, ¶ 10, 764 N.W.2d 665.

[¶8] Whether undue influence occurred generally presents a question of fact.  
Erickson v. Olsen
, 2014 ND 66, ¶ 19, 844 N.W.2d 585
.
  This Court has said “[a]ctions involving state of mind are among those kinds of cases which are not 
usually
 suited for disposition by summary judgment.”  
Boone v. Estate of Nelson
, 264 N.W.2d 881, 887 (N.D. 1978) (emphasis in original).  However, claims of undue influence “can be properly disposed of by summary judgment when [the parties claiming undue influence] have failed to support their opposition to the summary judgment motion with sufficient facts showing that there is a genuine issue for trial.”  
Id.

[¶9] “When a motion for summary judgment is made and supported as provided in [N.D.R.Civ.P. 56], an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in the rule, must set forth specific facts showing that there is a genuine issue for trial.”  
Boone
, 264 N.W.2d at 887
.
  For an undue influence claim ultimately to be “submitted to a jury, the evidence must be sufficient with regard to each 
essential element
 of the claim and the evidence must also create more than just a 
mere suspicion
 of undue activity.”  
In re Estate of Stave
, 2007 ND 53, ¶ 13, 729 N.W.2d 706 (quoting 
In re Estate of Dion
, 2001 ND 53, ¶ 34, 623 N.W.2d 720) (emphasis added).

III

[¶10] The Riskeys argue the district court erred in granting Rodney Riskey summary judgment because genuine issues of material fact exist for trial.  They contend:  1) the district court erred in deciding Rodney Riskey did not have a disposition to exercise undue influence over Annette Riskey, and 2) the court erred in deciding the Trust’s purchase option provision did not appear to be the result of undue influence exerted by Rodney Riskey over Annette Riskey.

[¶11] Chapter 59-12, N.D.C.C., includes provisions for the creation, validity, modification and termination of a trust, requiring the party creating a trust to have capacity.  N.D.C.C. § 59-12-02(1) [Uniform Trust Code (“U.T.C.”) § 402].  Under N.D.C.C. § 59-12-06 (U.T.C. § 406), “[a] trust is void or subject to reformation by the court to the extent its creation was induced by fraud, duress, or undue influence.”  As one treatise has explained:

The general rules regarding the effect of invalidating causes apply to conveyances and contracts connected with the creation of a trust.  Thus, a trust may be invalidated on the grounds of fraud, undue influence, duress, mistake, and other types of unconscionable or illegal conduct.  Although historically, a “no-reformation rule” that applied to wills often also was applied to inter vivos trusts, the modern trend to conform to the settlor’s intention provided that clear and convincing evidence exists to establish the mistake and the donor’s intention.

Amy Morris Hess, George Gleason Bogert, and George Taylor Bogert, 
The Law of Trusts and Trustees
 § 44 (3rd ed. 2007) (citations omitted); 
see also
 90 C.J.S. 
Trusts
 § 80 (2010) (“When a declaration of trust is procured by undue influence, it is invalid and unenforceable, but the influence exerted must be undue and operative to such a degree as to amount in effect to coercion.”); Restatement (Third) of Trusts § 12 (2003) (“A transfer in trust or declaration of trust can be set aside, or the terms of a trust can be reformed, upon the same grounds as those upon which a transfer of property not in trust can be set aside or reformed.”).

[¶12] Section 9-03-11, N.D.C.C., provides that “[u]ndue influence consists:”

1. In the use, by one in whom a confidence is reposed by another or who holds a real or apparent authority over that person, of such confidence or authority for the purpose of obtaining an unfair advantage over that person;

2. In taking an unfair advantage of another’s weakness of mind; or

3. In taking a grossly oppressive and unfair advantage of another’s necessities or distress.

See also
 N.D.C.C. § 9-03-03(4) (“An apparent consent is not real or free when obtained through . . . [u]ndue influence.”); N.D.C.C. § 9-03-04 (“Consent is deemed to have been obtained through duress, menace, fraud, undue influence, or mistake only when it would not have been given except for one or more of them.”).  “In cases involving nontestamentary transactions, this Court has defined undue influence as ‘improper influence [ ] exercised over the grantor . . . in such a way and to such an extent as to destroy his free agency or his voluntary action by substituting for his will the will of another.’” 
Erickson
, 2014 ND 66, ¶ 26, 844 N.W.2d 585 (quoting 
Johnson v. Johnson
, 85 N.W.2d 211, 221 (N.D. 1957)).  “In nontestamentary cases, this Court has held ‘[a] finding of undue influence . . . requires that three factors be established:  (1) A person who can be influenced; (2) The fact of improper influence exerted; and (3) Submission to the overmastering effect of such unlawful conduct.’” 
Id. 
(quoting 
Sulsky v. Horob
, 357 N.W.2d 243, 248 (N.D. 1984)).

[¶13] In this case, the parties and the district court applied a four-factor test for challenging a will to decide whether undue influence occurred.  In a will contest, this Court has defined “undue influence” as “the substitution of the purpose and intent of one exercising influence for the purpose and intent of the testator.”  
In re Estate of Vestre
, 2011 ND 144, ¶ 21, 799 N.W.2d 379 (quoting 
In re Estate of Stave
, 2007 ND 53, ¶ 12, 729 N.W.2d 706).  To prove undue influence in this context, the will contestant must establish: “1) a testator subject to undue influence; 2) the existence of the opportunity to exercise undue influence; 3) a disposition to exercise undue influence; and 4) a result that appears to be the effect of undue influence.”  
Estate of Stave
, at ¶ 12 (citation omitted); 
see also
 
Erickson
, 2014 ND 66, ¶ 24, 844 N.W.2d 585.  In granting summary judgment, the district court held genuine issues of material fact existed on factors one and two, but the Riskeys’ evidentiary submissions had not created material fact issues on factors three and four.

[¶14] On appeal, the Riskeys challenge the district court’s conclusions on the third and fourth factors, and although Rodney Riskey disagrees with the court’s holding on the first two factors, he also limits his response to the third and fourth factors.  “Our caselaw has consistently recognized ‘[t]he “law of the case” doctrine and the scope of the parties’ appeal define the parameters [of] our review.’”  
Erickson v. Brown
, 2008 ND 57, ¶ 27, 747 N.W.2d 34 (quoting 
Hopfauf v. Hieb
, 2006 ND 72, ¶ 11 n.2, 712 N.W.2d 333); 
see also
 
Tom Beuchler Constr. v. City of Williston
, 413 N.W.2d 336, 339 (N.D. 1987).  For purposes of this appeal, we will also assume that the four-

factor test applies to decide whether undue influence occurred in the creation of the Trust.

[¶15] The Riskeys also acknowledge on appeal that when a relationship of personal confidence exists, a presumption of undue influence may arise against a trustee if the trustee obtains an advantage from the beneficiary.  Section 59-18-01.1, N.D.C.C., provides a rebuttable presumption of undue influence for certain trust transactions.  We have said that “[t]his presumption applies not only to transactions involving trustees, agents, and attorneys-in-fact, but also to all transactions involving confidential relationships.”  
In re Estate of Harris
, 2017 ND 35, ¶ 19, 890 N.W.2d 561 (quoting 
In re Estate of Bartelson
, 2015 ND 147, ¶ 16, 864 N.W.2d 441); 
see also
 
In re Estate of Vizenor
, 2014 ND 143, ¶¶ 26-27, 851 N.W.2d 119.  The Riskeys, however, did not raise this rebuttable presumption in their response to Rodney Riskey’s summary judgment motion in the district court.  Moreover, they have not identified as an issue on appeal that the district court failed to apply a presumption of undue influence.  “Issues not briefed by an appellant are deemed abandoned, and thereby become the law of the case and will not be considered on appeal.”  
State v. Duchene
, 2007 ND 31, ¶ 10, 727 N.W.2d 769; 
see also
 
Estate of Murphy v. Maus
, 2001 ND 87, ¶ 13 n.1, 626 N.W.2d 281.  We therefore limit our consideration to the issues specifically raised on appeal.

IV

[¶16] The Riskeys argue the district court erred in deciding that Rodney Riskey did not have a disposition to exercise undue influence over Annette Riskey and that the purchase option did not appear to be the result of undue influence exerted by Rodney Riskey over Annette Riskey.

[¶17] Here, the district court concluded the Riskeys failed to raise genuine issues of material fact to show undue influence in the creation of the 2004 Trust.  Regarding Rodney Riskey’s disposition, the court held that simply showing Rodney Riskey received a disproportionate amount of the estate was not enough to establish his “active participation” in determining the Trust’s terms.  
See
 
Stave
, 2007 ND 53, ¶ 16, 729 N.W.2d 706 (while beneficiary of a will received a disproportionate amount of the estate, no evidence showed the beneficiary’s “active participation . . . in securing the preparation of, or a change in, [the] will.” (citation omitted)).  The court reasoned that there was no evidence of conversations between Rodney Riskey and Annette Riskey or between Rodney Riskey and attorney Peterson on Rodney Riskey’s desired terms of the Trust.  The court held the evidence instead showed the Trust’s purchase option provision was a term carried over from Gilbert Riskey and Annette Riskey’s prior testamentary documents executed before Gilbert’s death in 2003.  The court also relied on a 2004 letter from attorney Peterson to Jeffrey Riskey, which in part stated:

The purpose of this trust was for a legal entity to hold title to the farmland until Annette’s death.  The purpose of that is to do our best to preserve that property intact in the event Annette would ever need to be admitted to a nursing home.  The terms of that trust are the same as those terms that were in the Will but it is just a different method of handling things.

[¶18] The district court acknowledged deposition testimony showed the family felt Rodney Riskey attempted to prevent them from being alone with Annette Riskey, but the court noted this was in 2015 near the time of Annette Riskey’s death, rather than in 2004.  The court also held that Rodney Riskey’s failure to disclose the Trust’s terms after it was executed was “not necessarily” evidence of his disposition to exercise undue influence.  The court concluded that, construing the facts in the light most favorable to the Riskeys, the evidence provided “mere suspicion” on the third factor.

[¶19] The district court ruled the fourth factor was dispositive of the summary judgment motion.  Regarding the fourth factor, requiring the result to appear to be the effect of undue influence, the court again reasoned that merely showing Rodney Riskey would receive a disproportionate portion of the estate was insufficient.  The court stated the evidence showed Annette Riskey did not express a desire to change the Trust, ask anyone to take a particular action, make an attempt to change the Trust, or have any of her children bring her to an attorney to discuss options, even after being confronted in 2015.  The court also concluded the Trust provision was not the effect of Rodney Riskey’s undue influence because of Gilbert and Annette Riskey’s prior testamentary documents:

Jeffrey Riskey and Other Beneficiaries argue the evidence of this element is that “[t]here is nothing but testimony of Annette wanting to [be] fair.”  However, prior testamentary documents indicate an intent, even before the 2004 trust, for a purchase option for Rodney Riskey.  Even the amount of the prior document’s purchase price ($65,000) is identical to the trust term.  The letter from David Peterson to Jeffrey Riskey also indicates the will terms were used to draft the trust.  Jeffrey Riskey and Other Beneficiaries have not presented evidence by way of affidavit or other competent means to refute this evidence and raise an issue of material fact as to the purchase option being the result of carry-

over of terms from prior testamentary documents.  There is no evidence Rodney Risky somehow influenced his mother and father in the execution of those testamentary documents prior to the 2004 trust.

The court noted that John Riskey’s deposition testimony showed that Gilbert Riskey wanted to keep the farm intact and in the family, which the court said was arguably accomplished by the purchase option to Rodney Riskey.  The court held a reasonable person could only reach the conclusion that the purchase option came from prior testamentary documents and was not the effect of Rodney Riskey’s undue influence on Annette Riskey.

[¶20] The Riskeys raise numerous arguments about disputed facts they contend preclude summary judgment, arguing Rodney Riskey actively participated in securing the preparation of the Trust.  They rely on evidence showing Rodney Riskey made the appointment for their mother to meet with his attorney, shortly after their father’s death; took her to the initial appointment to discuss options for her estate plan; and accompanied her to the appointment when she executed the Trust.  Rodney Riskey responds in his affidavit, however, that his mother had asked him what would happen to the family farmland if she was required to enter a nursing home; he suggested she speak to her attorney; and upon his mother’s request, he scheduled a meeting with the law office of Hodny Currie.  He asserts he did not discuss with his mother the legal action she should take or the documents to be prepared, and he was not involved in her interview with the attorney or creation of the Trust documents.

[¶21] The Riskeys nevertheless assert that Annette Riskey had little to no knowledge about farming, finances, business, and the price of land, while Rodney Riskey did, and Rodney Riskey’s motive in 2004 was to protect his position in the farm.  They also rely on evidence showing Annette Riskey expressed concern to her children shortly before her death in 2015 about the disposition of her property, did not understand what was in her will, and did not understand the Trust’s purchase option provision.  They argue the district court erred in deciding Rodney Riskey’s receipt of a disproportionate share of the property was insufficient to show the effect of undue influence; erred in deciding Annette Riskey’s state of mind was the same in 2004 as when she executed the will in 2000; and did not allow them the chance to refute the earlier testamentary documents.  They assert the family had an understanding that Rodney Riskey would continue to farm the land, eventually own the land, but pay a “fair price” for the farmland, and there was evidence the Riskeys believed the farmland would be split equally among the brothers.

[¶22] On the basis of our review, however, we agree with the district court’s analysis that the lack of evidence on the fourth factor is dispositive.  The parties do not dispute on appeal that the Trust’s purchase option language was a carry-over provision from Gilbert and Annette Riskey’s wills executed in 2000.  While the Riskeys argue this provision in Annette Riskey’s previous will does not mean she would have wanted the same provision in the 2004 Trust, it also does not establish inclusion of the purchase option was the effect of Rodney Riskey’s undue influence.  During oral argument, the Riskeys acknowledged they would still be required to challenge the will provision if successful in declaring the Trust invalid.  The mere fact of an unequal distribution of the property and Annette Riskey’s desire to be “fair” does not rise above a mere suspicion for purposes of the Trust’s execution in 2004.

[¶23] While there is evidence that Rodney Riskey took his mother to the attorney and the assertion that it was his attorney rather than his parents’ attorney, what is lacking is any evidence showing Rodney Riskey exerted influence over Annette Riskey in 2004, when the Trust document was executed.  “Evidence which merely shows that a party who benefited . . . had both motive and opportunity to exert influence . . . is not sufficient . . . where there is no evidence that such influence was actually exerted.”  
In re Estate of Polda
, 349 N.W.2d 11, 14 (N.D. 1984); 
see also
 
In re Estate of Herr
, 460 N.W.2d 699, 702 (N.D. 1990).  Additionally, although the Riskeys assert Annette Riskey wanted to be fair and they believed they would share equally, there is no evidence showing what a fair disposition would have been in light of the prior testamentary documents.

[¶24] We conclude that the facts, when viewed in a light most favorable to the Riskeys, do not support a conclusion that the Trust’s purchase option provision was the effect of Rodney Riskey’s undue influence on Annette Riskey.  On this record, we therefore conclude the district court properly granted summary judgment.

V

[¶25] The judgments are affirmed.

[¶26] Gerald W. VandeWalle, C.J.

Jon J. Jensen

Jerod E. Tufte

Benjamen J. Johnson, D.J.

Daniel J. Crothers

[¶27] The Honorable Benjamen J. Johnson, D.J., sitting in place of Lisa Fair McEvers, J., disqualified.